IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HEART 6 RANCH, LLC<br>16985 Buffalo Valley Road<br>Moran, WY 83013,<br><br>Plaintiff,<br><br>v.<br><br>RYAN ZINKE, *in his official capacity as*<br>Secretary of the Interior<br>1849 C Street, NW<br>Washington, DC 20240,<br><br>UNITED STATES DEPARTMENT OF THE<br>INTERIOR<br>1849 C Street, NW<br>Washington, DC 20240,<br><br>MICHAEL T. REYNOLDS, *in his official capacity*<br>*as* Acting Director of the National Park Service<br>1849 C Street, NW<br>Washington, DC 20240,<br><br>and<br><br>NATIONAL PARK SERVICE,<br>1849 C Street, NW<br>Washington, DC 20240,<br><br>Defendants. | Case No. _____ |

**COMPLAINT FOR A TEMPORARY RESTRAINING ORDER, PERMANENT
INJUNCTIVE RELIEF, AND DECLARATORY JUDGMENT**

Plaintiff Heart 6 Ranch, LLC ("Heart 6"), by and through its undersigned attorneys, complain of defendants as follows and request temporary and permanent injunctive relief, and a declaratory judgment:

## INTRODUCTION

1.　　This Complaint concerns the actions of the United States, acting through the United States Department of the Interior and its constituent agency, the National Park Service ("NPS") (collectively referred to herein as "defendants"). NPS has acted arbitrarily and capriciously, has abused its discretion, and has otherwise failed to follow applicable law and regulations in obtaining oversnow vehicle services for Yellowstone National Park.

2.　　The NPS solicited offers from concessioners in 2014 for oversnow vehicle (snowmobiles and snowcoaches) services for Yellowstone National Park ("Yellowstone"), intending to award a total of twenty-three (23) concession contracts, distributed between the various entrances to Yellowstone, and allocating daily snowmobile and snowcoach trips by contract. Each contract was for a period of ten (10) years. Heart Six Ranch, LLC ("Heart Six") (predecessor in interest to Plaintiff Heart 6), an incumbent concessioner, submitted ten (10) timely and responsive proposals for services to be provided at the South Entrance of Yellowstone. (Declaration of Frank Hubert Chapman II, "Chapman Dec.", ¶ 7, Exhibit ("Exh.") 1). NPS ultimately awarded ten concession contracts for services for the South Entrance of Yellowstone National Park. Heart Six did not receive an award. As a consequence, since the winter season of 2014, Plaintiff has not been permitted to offer oversnow vehicle tours to its ranch guests and, as a result, its winter operations have been curtailed with a substantial loss of revenue causing the ranch to operate at a financial loss.

3.　　Beginning in 2016, Plaintiff heard rumors that one of the ten concession awards remained outstanding. (Chapman Dec., ¶ 10). Plaintiff inquired of NPS in July 2016 regarding

the status of the outstanding contract and requesting that it receive the outstanding oversnow vehicle contract and associated permits but was advised that NPS was "currently considering" what to do. (Chapman Dec., ¶ 10). At no time has Plaintiff received notice of any action with respect to what happened to the daily allocation of oversnow vehicle trips associated with the terminated contract, specifically whether NPS had awarded a replacement contract to another vendor, or had modified an existing concession contract to add an additional daily allocation. (Chapman Dec., ¶ 13).

4.     Having heard nothing from NPS, Plaintiff submitted a Freedom of Information Act ("FOIA") request to the Department of Interior on July 24, 2017, seeking information regarding the Prospectus and the awarded contracts. NPS successfully blocked the FOIA request by assessing unreasonable fees; the fee was set initially at $15,837.25, but was later reduced to a still unreasonable amount of $3,008.

5.     Having continued to investigate thematter, by letter dated July 25, 2017, Plaintiff advised NPS of its understanding that one of the contracts had been terminated, and asserted a right to an award of what it believed to be an unawarded contract resulting from the 2013 Prospectus. (Chapman Dec., ¶ 12, Ex. 3).

6.     On September 18, 2017, NPS provided copies of the ten concession contracts relating to the South Entrance of Yellowstone including, but not limited to, the terminated contract. (Chapman Dec., ¶ 11).

7.     Upon receipt of a copy of the ten contracts in response to its FOIA request, Plaintiff learned as a fact that one of the ten awarded concession contracts had in fact been terminated on October 29, 2014. Plaintiff promptly sent a second letter to NPS, dated September

25, 2017, in which it once again asserted its rights to a concession contract. (Chapman Dec., ¶ 12, Ex. 4).

8. By letter dated October 17, 2017, the NPS explained its position regarding the terminated contract, specifically that NPS had substantial discretion to not award a contract, to award to another vendor, or to modify an existing contract. (Chapman Dec., ¶ 12, Ex. 5). NPS did not advise what happened to the daily allocation of oversnow vehicle trips associated with the terminated contract – whether they are in fact unawarded, awarded to another concessioner through a replacement contract or modification of an existing concession contract.

9. Based on the NPS response, and on information and belief, NPS either has awarded a replacement contract to a different vendor or modified an existing contract to include the daily allocation of oversnow vehicle services attributable to the terminated contract, contrary to law and regulations, and for which Plaintiff was eligible and for which it stood a substantial chance of receiving, based on its proposal and pricing. (Chapman Dec., ¶ 13).

10. Heart 6 seeks through this action an order from this Court (a) declaring that (i) Heart 6 is entitled to the award of a concession contract to provide oversnow vehicle services for Yellowstone National Park as a replacement contract to the terminated contract; and (ii) if NPS awarded a replacement contract to a different vendor or modified an existing contract to include the daily snowmobile and snowcoach trips, such is void as contrary to law and regulations; and (b) directing NPS to award Plaintiff a concession contract for the full six remaining years of the ten (10) year term of the current Prospectus, pursuant to which Plaintiff will be permitted to provide two (2) daily oversnow vehicle tours, including one snowmobile trip and one snowcoach trip, commencing for the upcoming winter season of 2017/2018.

11.     Plaintiff, as a small family owned historic ranch, is being irreparably harmed by the lost opportunity to hold and perform such contract, and to have the benefit of the revenue, increased customer business, and status as a preferred offeror for the contract renewals at the end of the ten-year period. Therefore, NPS should be temporarily and permanently enjoined from performing under such improperly granted contract.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under the Administrative Procedures Act, 5 U.S.C. §§ 500 *et seq.*, the National Park Service Concessions Management Improvement Act of 1998, 16 U.S.C. § 5951 *et seq.* and its implementing regulations set out at 36 C.F.R. Part 51. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and may issue the requested relief pursuant to 28 U.S.C. § 2201 (declaratory relief) and 28 U.S.C. § 2202 (injunctive relief).

13.     The claims asserted herein are related to concession contracts issued by Defendant, and do not involve procurements.

14.     Heart 6 has standing to bring these claims. Defendants' determination to deprive Heart 6 of a concession contract has caused it concrete, present and continuing injury by denying Heart 6 the benefits of the contract. Defendants' conduct has also caused harm to Heart 6's long-term growth plans. Because it cannot offer oversnow vehicle services to its guests, the winter season has been significantly and materially diminished, the character of the historic Heart 6 ranch has been damaged and guests are harmed.

15.     Defendants' actions are ripe for judicial review under Article III, Section 2 of the U.S. Constitution, and reviewable as final agency action under 5 U.S.C. § 704. Withholding judicial review will cause direct and immediate hardship to Heart 6 for which money damages

would be inadequate, even if they were available. Plaintiff has unsuccessfully pursued relief administratively, and has no possible remedies short of this action.

16. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and 1391(e) because the final decisions at issue here were made on behalf of the Director of the National Park Service, located in Washington, D.C.

## PARTIES

17. Plaintiff Heart 6 is a small business established as a limited liability company under the laws of Wyoming. Heart 6 Ranch was established in the early 1900's on homestead land. The ranch was one of the first outfitters serving Yellowstone National Park, providing both winter and summer activities including, but not limited to, snowmobile guided tours and float trips. Plaintiff Heart 6 acquired the ranch from its predecessor owner, Heart Six Ranch, in 2016. (Chapman Dec., ¶ 4).

18. Defendant is the Department of the Interior acting through the National Park Service ("NPS"). NPS is an agency of the Department of the Interior, with its headquarters located at 1849 C Street NW, Washington, DC 20240. Acting Director Reynold's office is also located at that address. The Department of the Interior has its headquarters at the same address, which is where Secretary Ryan Zinke's office is located.

## STATEMENT OF LAW AND FACTS

### Background

19. This suit arises out of NPS's actions following its issuance of a Prospectus for proposals to enter into twenty-three (23) non-procurement contracts with NPS to provide oversnow vehicle services, including guided snowmobile tours and snowcoach tours, in Yellowstone National Park.

20. NPS issued a prospectus on November 26, 2013, soliciting proposals for up to twenty-three (23) concession contracts to operate oversnow vehicle services within Yellowstone National Park.

21. The Prospectus was subject to the terms of the National Park Service Concessions Management Improvement Act of 1998, 16 U.S.C. § 5951 *et seq.* ("NPS Concessions Management Improvement Act") and its implementing regulations at 36 C.F.R. Part 51.

22. The NPS Concessions Management Improvement Act requires NPS to pursue a competitive selection process for awarding concession contracts by issuing a Prospectus. 16 U.S.C. § 5952(2).

23. Per the Prospectus, ten (10) contracts were to be awarded for the South Entrance. Each South Entrance concessioner was to be allotted either two or three daily transportation events including one or two snowmobile events. The remaining thirteen (13) concession contracts were to be distributed between the North, West, and East Entrances of Yellowstone.

24. There were five selection factors in the Prospectus.

   a. Responsiveness to the objective of protecting, conserving, and preserving park resources

   b. Responsiveness to the objective of providing necessary and appropriate visitor services at reasonable rates. Offerors were expressly required to agree "to operate at the current Service approved rates during the term of the Concession Contract until such time as a new rate schedule is approved by the Service, in accordance with 16 U.S.C. § 5955."

   c. Experience

   d. Financial capability

  e. The amount of the proposed franchise fee. Offerors were required to agree to a minimum franchise fee of 4% for the first $200,000 of annual gross revenue, and a minimum franchise fee of 5% for annual gross revenue over $200,000. Offerors were advised that an offered franchise fee in excess of the minimum would generally result in a higher score.

25. Heart Six Ranch, Inc., ("Heart Six") the predecessor in interest to Plaintiff, timely submitted ten (10) responsive proposals to obtain concession contracts at the South Entrance. Heart Six was an incumbent concessioner, having successfully provided snowmobile services to Yellowstone for a period exceeding thirty (30) years. (Chapman Dec., ¶ 4). Notwithstanding the fact that it had been providing these services for over 30 years, and doing so successfully, Heart Six was not considered a "preferred offeror" under 16 U.S.C. §5952(8)(B). NPS did not consider the concession contracts to be awarded under the Prospectus "qualified concession contracts" under 36 C.F.R. §51.37. Since it did not consider the contracts to be "qualified concessions contracts," NPS did not allow preferred offerors. 36 C.F.R. §51.36.

26. In addition to fully responding to all selection factors, Heart Six proposed a minimum franchise fee of 7.01% of its annual gross revenue for each proposed contract, substantially above the minimum required in the prospectus. (Chapman Dec., Ex. 1 at page 50).

27. At the time the prospectus was issued, Heart Six was successfully providing those services under Commercial Use Authorization ("CUA") CUA-YELL415-12, for the period July 1, 2012 through June 30, 2014. For the final three months of the 2012 winter season, Heart 6 provided over 400 guided snowmobile trips into Yellowstone, serving over 370 guests. (Chapman Dec., ¶ 5).

28. By letter dated April 14, 2014, Heart Six was notified that DTRS Jackson Hole dba Four Seasons Resort Jackson Hole ("Four Seasons"); Forever Resorts, LLC dba Scenic Safaris ("Forever Resorts"), and Teton Science School had been identified as the successful offerors. (Chapman Dec., ¶ 8, Ex. 2). Forever Resorts received seven (7) of the ten (10) contracts.

29. At the time, Heart Six was provided a debriefing, in which it was advised that the awardees offered higher franchise fees than did Heart Six. (Chapman Dec., ¶ 9). That was not true. Scenic Safaris, which received seven contracts, offered 5% for the first $200,000 in annual gross revenues, and 6.1% for annual gross revenues over $200,000.

30. The contract issued to Four Seasons, CC-YELL521-14, was allocated two daily transportation events including one daily snowmobile event. Heart Six submitted a proposal for this contract. This contract was terminated on October 29, 2014, at the request of Four Seasons.

31. Plaintiff did not receive notice of this termination nor did it receive notice of a replacement awardee. (Chapman Dec., ¶ 10). Although Plaintiff had heard rumors that one of the contracts had been terminated, and had inquired of NPS, Plaintiff only was able to confirm this termination when it obtained a partial release of documents in response to its Freedom of Information Act request on September 18, 2017.

32. To the extent that NPS awarded a replacement contract to another vendor, it did so non-competitively in violation of 36 C.F.R. § 51.25, which permits non-competitive awards only in "extraordinary circumstances."

33. But for the failure of NPS to follow applicable regulations, Heart Six, based on its proposal, its substantial experience, and its significantly higher franchise fee, stood a substantial chance of being awarded a replacement contract once the Four Seasons contract was terminated.

34.     To the extent that NPS did not issue a replacement contract, but allocated the daily transportation events from the terminated contract to an existing vendor via contract modification, that action violated 36 C.F.R. § 51.19.

35.     The unavailability of oversnow vehicle permits has deprived Heart 6 of an estimated annual revenue of $481,500, based on the estimates included in its proposal. (Chapman Dec., ¶ 14, Ex. 1), Plaintiff has also been deprived of lodging and restaurant income due to the decreased operations during the winter seasons. (Chapman Dec., ¶ 15). Although Plaintiff remains open during the winter, it is operating at a loss due to the loss of the snowmobile/snowcoach permits. (Chapman Dec., ¶ 15). While certain, thedamages resulting from the NPS actions are not quantifiable and are therefore irreparable.

36.     Unless temporary relief is provided to Plaintiff permitting winter services to commence immediately, Plaintiff will incur another winter season's loss.

37.     As a result of NPS's improper actions, Plaintiff is in a less favorable position as an offeror for the next round of NPS concession contracts for these services. (Chapman Dec., ¶ 16). It will not be an incumbent concessioner, and will not be considered as a preferred offeror in the future under 36 C.F.R. §51.36. Because it will not be an eligible preferred offeror, Plaintiff will be irreparably harmed.

## COUNT I

38.     Plaintiff incorporates Paragraphs 1 – 37 herein as through fully set forth.

39.     NPS violated applicable law, acted in an arbitrary and capricious manner and abused its discretion when, after it terminated Four Seasons' concession contract, it either awarded a replacement concession contract to another vendor or modified another vendor's concession

contract to add the daily oversnow vehicle events from the terminated contract, in violation of applicable regulations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a) issue an order declaring that NPS violated the law, acted arbitrarily and capriciously, and abused its discretion when it either awarded a replacement concession contract to another vendor or modified an existing concession contract to add the daily oversnow vehicle trips from the terminated contract;

(b) issue an order declaring that any such replacement or modified concession contract is void as a matter of law;

(c) issue an order declaring that Plaintiff has succeeded on the merits, will suffer irreparable harm if an injunction is not issued, the harm to plaintiff if an injunction is not issued outweighs the harm to the Government if an injunction is granted, and an injunction is in the public interest;

(d) issue a temporary restraining order directing NPS to award a replacement concession contract to Plaintiff immediately in order that Plaintiff obtains the requisite permits for the 2017/2018 winter season.;

(e) grant Plaintiff its costs and attorneys' fees incurred in pursuing this action; and

(r) grant Plaintiff such further relief as this Court deems just and proper.

Respectfully submitted,

*[signature]*

John M. Murdock, Esq. (D.C. Bar No. 415765)
Potter & Murdock, P.C.
400 S. Maple Ave., Suite 210
Falls Church, VA  22046
Tel: (703) 992-6950
Fax: (703) 832-0211
jmurdock@pottermurdock.com

Rosanne E. Stafiej, Esq. (D.C. Bar No. 494007)
Potter & Murdock, P.C.
2200 Pennsylvania Ave., NW
4th Floor East Tower
Washington, DC 20037
Tel: (703) 740-3913
Fax: (703) 832-0211
rstafiej@pottermurdock.com