# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HEART 6 RANCH, LLC,<br>    Plaintiff<br>v.<br>RYAN ZINKE, *et al.*,<br>    Defendants | Civil Action No. 17-2711 (CKK) |

## MEMORANDUM OPINION
(January 4, 2018)

This is an Administrative Procedure Act ("APA") case challenging the manner by which the National Park Service ("NPS") has allocated the rights to provide oversnow vehicle ("OSV") services in Yellowstone National Park. Before the Court is Plaintiff's [2] Application for a Temporary Restraining Order ("TRO"). Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as it currently stands, the Court DENIES Plaintiff's Application. Without making any final determination as to the merits of Plaintiff's claims, the Court concludes that, at this very early stage, Plaintiff has not demonstrated a likelihood of success. The Court is also not persuaded that Plaintiff would suffer irreparable injury in the absence of preliminary injunctive relief.

## I.    BACKGROUND

In 2013, NPS solicited offers from concessioners to provide OSV services in Yellowstone National Park. Compl., ECF No. 1, at ¶ 2. Concessioners were invited to bid on contracts to provide OSV services for ten years at the north, south, east or west entrances to the

---

[1] The Court's consideration has focused on the following documents:
- Pl.'s App. for Temporary Restraining Order ("Pl.'s App."), ECF No. 2;
- Defs.' Opp'n to Pl.'s App. for Temporary Restraining Order ("Defs.' Opp'n"), ECF No. 7;
- Pl.'s Reply to Defs.' Opp'n to Pl.'s App. ("Pl.'s Reply"), ECF No. 8.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

park. *Id*. A certain number of daily snowmobile and snowcoach trips, or "transportation events," were allocated to each contract. *Id.* Plaintiff, a purveyor of OSV services, submitted proposals for the ten contracts associated with the park's south entrance, but was not awarded any of them. *Id.* DTRS Jackson Hole, LLC, doing business as Four Seasons Resort Jackson Hole ("Four Seasons"), was awarded one of the ten contracts for which Plaintiff had bid. *Id.* ¶ 28. However, for unspecified reasons, Four Seasons subsequently terminated its contract with NPS. *Id.* ¶ 3. In its complaint, Plaintiff stated that it was not sure "what happened to the allocation of oversnow vehicle trips associated with the terminated contract, specifically whether NPS had awarded a replacement contract to another vendor, or had modified an existing concession contract to add an additional daily allocation." *Id.* Plaintiff speculated that NPS had taken one of these two actions, and alleged that either violated the APA. *Id.* ¶ 9. Plaintiff claimed that it should have been awarded the terminated contract. *Id.* ¶ 10.

Plaintiff filed this lawsuit on December 20, 2017, and simultaneously filed the pending Application for a TRO. The Court held a teleconference on the record with the parties later that day, during which it set a briefing schedule that was consented to by both parties. Defendants then filed their Opposition to Plaintiff's Application.

In their Opposition, Defendants have explained how NPS reassigned the transportation events associated with the terminated Four Seasons contract. The terminated contract had given Four Seasons the right to provide two daily transportation events. *See* Decl. of Dale Rinehart, ECF No. 7-1, at ¶ 2. That contract was cancelled in October 2014, at the request of Four Seasons. *Id.* NPS did not reassign the two transportation events associated with the cancelled contract during the 2014-15 or 2015-16 winter seasons. *Id.* ¶ 3. They went unused. *Id.* Then, on October 19, 2016, NPS notified concessioners who already held contracts to provide OSV

services in the park and told them that NPS had decided to reallocate the two transportation events on an "experimental basis" for one season. *Id.*; *see also* Defs.' Ex. 3, ECF No. 7-5. NPS solicited those concessioners to participate in a lottery to distribute the events. *Id.* In the solicitation, NPS indicated that the transportation events would be used to provide "one-way transportation to and from West Yellowstone and Old Faithful and to and from the South Entrance and Old Faithful." Defs.' Ex. 3. In the end, one transportation event was added to a contract already held by an OSV concessioner at the South entrance, and another was reassigned to a contract at the West entrance to the park. Rinehart Decl. ¶ 3.

Plaintiff's TRO Application is now ripe for resolution.

## II. LEGAL STANDARD

A temporary restraining order or preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (emphasis in original; quotation marks omitted)). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (quoting *Sherley*, 644 F.3d at 392 (quoting *Winter*, 555 U.S. at 20) (alteration in original; quotation marks omitted)). "'When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction.'" *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292

3

(D.C. Cir. 2009)). "The four factors have typically been evaluated on a 'sliding scale.'" *Davis,* 571 F.3d at 1291 (citation omitted). Under this sliding-scale framework, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Id.* at 1291-92.

The Court notes that it is not clear whether this Circuit's sliding-scale approach to assessing the four preliminary injunction factors survives the Supreme Court's decision in *Winter*. *See Save Jobs USA v. US. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015). Several judges on the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") have "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'" *Sherley*, 644 F.3d at 393 (quoting Davis, 571 F.3d at 1296 (concurring opinion)). However, the D.C. Circuit has yet to hold definitively that *Winter* has displaced the sliding-scale analysis. *See id.*; *see also Save Jobs USA*, 105 F. Supp. 3d at 112. In any event, this Court need not resolve the viability of the sliding-scale approach today as the Court determines that "a preliminary injunction is not appropriate even under the less demanding sliding-scale analysis." *Sherley*, 644 F.3d at 393.

### III. DISCUSSION

Plaintiff's Application for a TRO will be denied. Plaintiff has not demonstrated a likelihood of success on the merits, nor has it demonstrated that it will suffer irreparable harm in the absence of a TRO. The balance of equities and public interest factors are in equipoise, and accordingly do not support the granting of preliminary injunctive relief.

**A. Plaintiff Fails to Establish a Likelihood of Success on the Merits**

Plaintiff has not carried its burden of establishing a likelihood of success in this lawsuit. Before considering the merits of Plaintiff's APA claim, the Court first addresses Defendants' argument that no judicial review is available at all in this case. Defendants argue that Plaintiff

lacks standing, that there has been no final agency action, and that the challenged conduct is "entirely within the discretion of the Director of the National Park Service." Defs.' Opp'n at 9-11. At least on the current record, the Court is not persuaded by these arguments.

Plaintiff has shown at least a "substantial likelihood" of standing, as is required for the issuance of a preliminary injunction. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Plaintiff claims that it was deprived of the right to a legally valid procurement process for OSV services for which it had bid and lost. The D.C. Circuit has held that "[a]n injury to 'a bidder's right to a fair procurement is obviously an injury both traceable to the alleged illegality in a procurement and redressable by any remedy that eliminates the alleged illegality.'" *Nat'l Mall Tours of Washington, Inc. v. United States Dep't of the Interior*, 862 F.3d 35, 44 (D.C. Cir. 2017) (quoting *Nat'l Mar. Union of Am. v. Commander, Military Sealift Command*, 824 F.2d 1228, 1237-38 (D.C. Cir. 1987)). There also appears to be a final agency action that can be challenged in this case—the allocation of the two transportation events from the terminated Four Seasons contract to concessioners other than Plaintiff for the 2016-17 winter season. Defendants fail to explain why this action does not constitute a "final agency action." Finally, Defendants' argument that "the NPS was not required to issue a replacement contract" and "[t]he decision whether to solicit a replacement contract is entirely within the discretion of the Director of the National Park Service," Defs.' Opp'n at 11, misses the point. Even assuming that these assertions are correct, Plaintiff is not challenging the NPS's decision whether to issue a replacement contract. Plaintiff is arguing that the manner by which Defendants allocated transportation events associated with the terminated Four Seasons contract to concessioners other than itself violated certain statutes and regulations. If Plaintiff is correct, NPS took actions

contrary to law and not within its discretion. The Court concludes, for the purposes of this preliminary Application, that Plaintiff's APA challenge is reviewable.

However, although Plaintiff may be able to overcome these threshold hurdles, the Court is not persuaded by Plaintiff's early showing regarding the merits of its APA claim. The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "This is a 'narrow' standard of review as courts defer to the agency's expertise." *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). The Court begins with a presumption that agency action is valid. *See Ethyl Corp. v. Envtl. Prot. Agency*, 541 F.2d 1, 34 (D.C. Cir. 1976).

Although the parties rely on numerous different interrelated regulations and statutes in their briefs, their dispute can be summarized succinctly: Defendants contend that the reallocation of the transportation events associated with the terminated Four Seasons contract to other already-existing contracts was a minor adjustment to user allocations that NPS was permitted to make as it deemed appropriate without initiating a new full-fledged public procurement process. In Plaintiff's view, the reallocation was not minor at all, and indeed was such a major and material change to the Yellowstone OSV services contracts that NPS was required to offer the transportation events to the public (including Plaintiff) through a new competitive procurement process.

The final resolution of this dispute will have to wait until a later stage of this case. The only question now before the Court is whether Plaintiff has demonstrated that it is likely to succeed and accordingly deserves the extraordinary remedy of a TRO. For the following reasons, the Court is not convinced that Plaintiff has made such a showing. To briefly summarize the facts laid out above: the transportation events at issue had already been awarded to Four Seasons through a competitive procurement process in 2013 and 2014. The transportation events were authorized but not being used during the 2014-15 and 2015-16 winter seasons. In 2016, these events were merely reallocated to the contracts of other concessioners. Those concessioners who received the transportation events were already providing OSV services in Yellowstone. Their allotment of transportation events simply increased.

Because no new contracts were awarded, the Court is not persuaded that the statutes and regulations Plaintiff cites that require a public solicitation process for the award of new concession contracts are applicable. *See* 54 U.S.C. § 101913(2)(A) ("prior to awarding a new concession contract . . . the Secretary shall publicly solicit proposals for the concession contract"); 36 C.F.R. § 51.4(a) ("The Director must award all concession contracts, except as otherwise expressly provided in this part, through a public solicitation process.").

Instead, what appears to be at issue in this case is the *amendment* of already existing contracts to increase the amount of transportation events allotted to particular concessioners. As Defendants point out, statutory and regulatory provisions appear to expressly permit such amendments. One NPS regulation states that "[a] concession contract may be amended to authorize the concessioner to provide minor additional visitor services that are a reasonable extension of the existing services. A concessioner that is allocated park area entrance, user days or similar resource use allocations for the purposes of a concession contract will not obtain any

contractual or other rights to continuation of a particular allocation level pursuant to the terms of a concession contract or otherwise. Such allocations will be made, withdrawn and/or adjusted by the Director from time to time in furtherance of the purposes of this part." 36 C.F.R. § 51.76. Similarly, the National Park Service Centennial Act of 2016 states that "[t]he Secretary may propose to amend the applicable terms of an existing concessions contract to provide new and additional services where the Secretary determines the services are necessary and appropriate for public use and enjoyment of the unit of the National Park System in which they are located and are consistent to the highest practicable degree with the preservation and conservation of the resources and values of the unit." 54 U.S.C. § 101913(9).[2]

There are limits to what NPS can do via amendment without triggering the need for a new public solicitation. The limits appear to be based on the "materiality" of the proposed amendment. Plaintiff cites 36 C.F.R. § 51.19, which states that "[e]xcept for incorporating into the concession contract appropriate elements of the best proposal, the Director must not award a concession contract which materially amends or does not incorporate the terms and conditions of the concession contract as set forth in the prospectus."[3] The National Park Service Centennial Act of 2016 similarly does not allow for amendments if they represent a "material change" to

---

[2] Plaintiff argues that the record submitted by Defendants "is devoid of any determination that the new services were 'necessary and appropriate,'" Pl.'s Reply at 14, but Defendants did not have the burden of presenting such a record at this point. It is Plaintiff that bears the burden of demonstrating the likely illegality of Defendants' acts in the context of an application for a TRO. Defendants enjoy a presumption that they acted lawfully. *See Ethyl Corp.*, 541 F.2d at 34.

[3] It is not clear to the Court that 36 C.F.R. § 51.19 applies to the circumstances here—the amendment of existing contracts. The regulation appears to address the situation where the terms of a contract when initially awarded materially differed from the terms set forth in a prospectus. *See Eco Tour Adventures, Inc. v. United States*, 114 Fed. Cl. 6, 38 (2013) ("36 C.F.R. § 51.19 . . . prohibits the agency from awarding a concession contract which 'materially amends' the terms and conditions of the draft concession contract set forth in the prospectus"). Nevertheless, the Court has assumed the regulation applies for the purposes of this Memorandum Opinion.

already authorized services. 54 U.S.C. § 101913(9) ("Such new and additional services shall not represent a material change to the required and authorized services as set forth in the applicable prospectus or contract."). Plaintiff's driving argument thus far in this case is that the reallocation of the transportation events was a "material" change, and therefore cannot be justified as a contract amendment. Defendant disagrees.

Although Plaintiff could ultimately develop a stronger argument regarding the materiality of the reallocation, the Court cannot say at this time that Plaintiff is "likely" to succeed. Plaintiff places much emphasis on the fact that the transportation events that were reallocated for the 2016-17 winter season were to be used for a shuttle to and from Old Faithful—a purpose for the events that was not envisioned when they were initially awarded to Four Seasons. Plaintiff claims that this new purpose means that a "new service" was created. Pl.'s Reply at 9. Without further explanation and development of the record, the Court is not convinced that the use of the transportation events to shuttle individuals to and from Old Faithful is as meaningful as Plaintiff suggests. As far as the Court can tell, NPS merely required that the concessioner that received the transportation events use them in a particular way. This does not appear to the Court to materially change the nature of the transportation events or the contracts to which they were allocated. Plaintiff also notes that one of the transportation events was moved from the park's south entrance to the west, but the supposed materiality of this change is diminished by fact that this type of reallocation is expressly envisioned by regulation. 36 C.F.R. § 7.13(1)(10)(viii) ("The Superintendent may . . . make limited changes to the transportation events allocated to each entrance"). Finally, Plaintiff's argument regarding materiality contains a number of unsupported or conclusory assertions, *see, e.g.*, Pl.'s Reply at 14-15 ("[t]hese new and additional

9

services were a material change to the required and authorized services") (internal quotations omitted), which are simply not helpful to the Court.

In the end, the Court need not make a final ruling at this point as to whether the amendments were "material" or, more broadly, whether the manner in which Defendants reallocated the transportation events was improper. At this stage it is sufficient to say that, having reviewed the parties' briefs, the limited record thus far, and the regulatory and statutory provisions at issue, the Court is not convinced that Plaintiff has established that it is likely to succeed on its claim that Defendants violated any statute or regulation.

Moreover, even if Plaintiff was correct that Defendants' course of action was contrary to statute or regulation, Plaintiff's claim faces other serious hurdles. The injunction Plaintiff seeks would "[d]irect[ ] the NPS to award [Plaintiff] a concession contract to replace the terminated Four Season's contract." Pl.'s App. at 13. But Plaintiff has not provided any plausible explanation as to why it is likely to obtain such relief in this case. Plaintiff appears to assume, without explanation or authority, that if Defendants' course of action is found to have been improper, *Plaintiff* is entitled to be awarded the transportation events associated with the cancelled contract. This assumption is misguided. Even if NPS had the authority to automatically award a cancelled contract to a previously-unsuccessful bidder, Plaintiff fails to explain why *it* would be the previously-unsuccessful bidder entitled to the contract.[4] Ten companies bid on the OSV contracts at issue. Decl. of Paula Bauer, ECF No. 7-2, at ¶ 3. Only

---

[4] Apparently recognizing this flaw in its Application, Plaintiff appears to walk back the scope of the injunction it seeks when it argues in its Reply that "Defendants should be ordered to conduct a proper selection process, in accordance with the law and regulations, and Plaintiff should be permitted to participate in that process." Pl.'s Reply at 6. Even this more limited injunction is still not appropriate because, as explained above, Plaintiff has not persuaded the Court that it is likely to demonstrate that Defendants' conduct was unlawful in any way.

three were successful. In other words, there were seven unsuccessful bidders like Plaintiff who theoretically could also claim an entitlement to those transportation events. Among those seven unsuccessful bidders, Plaintiff was not the "next in line" for any of the contracts. *Id.* ¶ 5. Plaintiff scored no higher than third for any of the ten contracts. *Id.* Moreover, the NPS Selecting Official determined that Plaintiff's proposal for the contracts was "non-responsive." *Id.* ¶ 6; Defs.' Ex. 2.[5] Although there is no suggestion by either party that NPS could or should have simply awarded the Four Season contract to the "next in line" responsive bidder, the fact that even in this hypothetical scenario Plaintiff would not have been awarded the contract is demonstrative of the implausibility of Plaintiff's request to be automatically issued that contract now. These hurdles are additional reasons why Plaintiff has not demonstrated a likelihood of success.

**B. Plaintiff Fails to Show Irreparable Injury**

Plaintiff also falls short of showing that it will suffer "irreparable injury" if an injunction is not issued. To show that a preliminary injunction or TRO is warranted, Plaintiff must demonstrate that there is a likelihood of irreparable injury. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."). The D.C. Circuit "has set a high standard for irreparable injury." *Id.* "First, the injury 'must be both certain and great; it must be

---

[5] The Court understands that Plaintiff disputes whether its proposals were actually non-responsive, Pl.'s Reply at 7-8, and perhaps this point will be clarified when the full record is before the Court at a later stage in this litigation. But as the record currently stands, it appears that the Selecting Official did in fact indicate that Plaintiff's proposals were "non-responsive." Defs.' Ex. 2.

11

actual and not theoretical.'" *Id.* (citation omitted). "Second, the injury must be beyond remediation." *Id.*

The primary harm Plaintiff claims that it will suffer in the absence of an injunction is a loss of revenue from not being entitled to provide OSV services for the two transportation events previously associated with the Four Seasons contract. Pl.'s App. at 10. There are a number of problems with this argument. As a general rule, "'in the absence of special circumstances . . . recoverable economic losses are not considered irreparable.'" *Davis*, 571 F.3d at 1295 (quoting *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.C. Cir. 1995)). At a minimum, an economic harm would have to be "certain, great and actual" to constitute irreparable injury. *National Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011). Plaintiff must demonstrate that the economic harm it will suffer is "significant," *Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d 327, 335 (D.D.C. 2012), and "sufficiently severe to warrant emergency relief," *Save Jobs USA*, 105 F. Supp. 3d at 115.

Plaintiff has not made this showing. For example, Plaintiff has not demonstrated that being unable to service the two transportation events at issue in this case places its business in jeopardy. In fact, the Court is unable to ascertain the economic impact on Plaintiff's business in any meaningful way at all because—absent quoting the amount of revenue it could allegedly receive based on rates set forth in NPS's prospectus—Plaintiff has provided the Court with no evidence on this issue. The Court is left to speculate as to the economic significance of the transportation events to Plaintiff. In doing so, the Court notes that Plaintiff has apparently operated without the rights to these transportation events for a number of years before this lawsuit was filed. Compl. ¶ 2 (noting that Plaintiff's "winter operations have been curtailed" as a result of not receiving the challenged contract "since the winter season of 2014"). The Court

12

also observes that if Plaintiff proves successful in obtaining the transportation events through this lawsuit, it could enjoy the revenue from them for a considerable portion of the lifespan of the challenged contracts, given that they will last until 2024.

An additional problem with Plaintiff's argument regarding lost revenue is that, even if the Court were to order NPS to conduct a new procurement process for the rights to use the two transportation events, there is no reason to assume that Plaintiff would receive those rights. Given that Plaintiff was not "next in line" for any of the original contracts awarded, it is far from certain that Plaintiff would be awarded the contract in any new procurement process. Plaintiff's alleged harm is accordingly highly speculative.

Plaintiff references other potential harms, but they do not constitute "irreparable injuries" that could support the granting of a TRO. In its Reply, Plaintiff argues that it "was deprived the opportunity to compete." Pl.'s Reply at 16. But even if true, this deprivation has already occurred, and can be remedied if Plaintiff is successful in this litigation. Plaintiff also alleges that it will be irreparably harmed absent an injunction because it will not be considered a "preferred offeror" for the purposes of future NPS procurements, given that it will not be an "incumbent concessioner." Pl.'s App. at 12. As noted above, the current contracts do not expire until 2024. If Plaintiff proves successful in this case, Defendants have represented that Plaintiff's status could be changed to that of an incumbent concessioner long before this time. Accordingly, this alleged loss of status also does not qualify as an "irreparable injury."

Finally, the Court notes that Plaintiff did not act with haste in moving for the emergency relief it now seeks. Plaintiff "heard rumors" that the Four Seasons contract had been terminated in 2016, Compl. ¶ 3, and knew of the termination definitively as early as September 2017, *id.* ¶¶ 6-7. Plaintiff did not move for a TRO until December 20, 2017. The Court acknowledges

13

Plaintiff's explanation that after it learned that the Four Seasons contract had been terminated, it first sought relief from NPS directly before filing this lawsuit. Nevertheless, the Court finds that Plaintiff could have filed its emergency motion much sooner. Plaintiff waited over two months after NPS had informed Plaintiff about its position on the transportation events to file for a TRO. Although certainly not a determinative factor, Plaintiff's delay "undermines [its] showing of irreparable injury." *Biovail Corp. v. U.S. Food & Drug Admin.*, 448 F. Supp. 2d 154, 165 (D.D.C. 2006); *see also, e.g.*, *Jack's Canoes & Kayaks, LLC v. National Park Serv.*, 933 F. Supp. 2d 58, 81 (D.D.C. 2013) ("Plaintiff's delay . . . undermine[s] any argument that its injury is of 'such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'") (quoting *Brown v. District of Columbia*, 888 F. Supp. 2d 28, 33 (D.D.C. 2012) (internal quotations omitted)).

## C.  Public Interest and the Balance of Hardships

Finally, Plaintiff has not shown that the public interest or the balance of hardships weigh in favor of granting injunctive relief. These factors appear to be in equipoise. On the one hand, Plaintiff argues that it will lose revenue if it is not able to provide OSV services pursuant to the transportation events associated with the cancelled Four Seasons contract during the pendency of this lawsuit. On the other hand, the concessioners who are currently providing those services would be unfairly injured if the transportation events were removed from their contracts. Simply awarding these transportation events to Plaintiff, as it requests, would also be unfair to other unsuccessful bidders who submitted responsive proposals for the original contracts in 2013-14 (especially those whose proposals were scored above Plaintiff's proposal). Plaintiff argues that the public's interest is served by allowing Plaintiff in particular to provide the OSV services, because it provides better and more affordable services than the current concessioners. But

Plaintiff provides no support for this assertion. Moreover, Plaintiff's argument that the public interest favors ensuring that the government's procurement of services is executed legally presumes the validity of Plaintiff's legal claims on the merits, but the Court has concluded that Plaintiff has not demonstrated a likelihood of succeeding on those claims at this early stage in the litigation.

## IV.  CONCLUSION

For the foregoing reasons Plaintiff's Application for a TRO is DENIED. This decision should not be misconstrued as an indication that Plaintiff's lawsuit will not ultimately succeed. After a complete record has been produced and the parties have had an opportunity to thoughtfully and thoroughly brief the issues, Plaintiff's arguments may prove meritorious. But a TRO "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley*, 644 F.3d at 392 (internal quotation omitted). No such showing has been made here. An appropriate Order accompanies this Memorandum Opinion.

　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　COLLEEN KOLLAR-KOTELLY
　　　　　　　　　　　　　　　　　　　　United States District Judge