|  |  |
|---|---|
| HEART 6 RANCH, LLC,<br>    Plaintiff<br>v.<br>DAVID BERNHARDT, *et al.*,[1]<br>    Defendants | Civil Action No. 17-2711 (CKK) |

**MEMORANDUM OPINION**
(February 5, 2019)

This is an Administrative Procedure Act ("APA") case challenging the manner by which the National Park Service ("NPS") has reallocated the rights to provide oversnow vehicle shuttle service transportation events in Yellowstone National Park. Before the Court is Plaintiff's [23] Motion for Judgment on the Administrative Record and Defendants' [25] Cross-Motion for Summary Judgment on the Administrative Record. Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as it currently stands, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendants' Cross-Motion for Summary Judgment. The Court concludes that NPS did not violate the APA by reallocating the shuttle service transportation events in a closed process among existing concessioners. The reallocation

---

[1] Pursuant to Fed. R. Civ. P. 25(d), David Bernhardt is substituted in his official capacity as Acting United States Secretary of the Interior.
[2] The Court's consideration has focused on the following documents:
- Pl.'s Mot. for Judgment on the Admin. Record ("Pl.'s Mot."), ECF No. 23;
- Defs.' Cross-Mot. for Summary Judgment and Opp'n to Pl.'s Mot. for Judgment on the Admin. Record ("Defs.' Mot."), ECF No. 25;
- Pl.'s Response to Defs.' Opp'n to Pl.'s Mot. for Summary Judgment and Pl.'s Opp'n to Defs.' Cross-Mot. for Summary Judgment ("Pl.'s Response"), ECF No. 27;
- Defs.' Reply in Support of Cross-Mot. for Summary Judgment ("Defs.' Reply"), ECF No. 29.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

of these transportation events did not materially alter the existing concessioner's contract; accordingly, a public solicitation process was unnecessary. And, because it was permissible for NPS to exclude Plaintiff and restrict the solicitation process to existing concessioners, Plaintiff does not have standing to challenge the specific method by which NPS reallocated these transportation events.

## I. BACKGROUND

In 2013, NPS issued a Prospectus soliciting offers for concessioners to provide guided interpretive oversnow vehicle tours in Yellowstone National Park. AR1. Twenty-three concession contracts were awarded pursuant to the Prospectus, including ten contracts for the South entrance of Yellowstone. AR10. Each contract allotted to the concessioner one or more daily oversnow vehicle "transportation event." *Id.*

Plaintiff had submitted proposals to obtain concession contracts for the South entrance as Plaintiff had previously provided oversnow vehicle services in Yellowstone. However, Plaintiff was not granted a contract. Instead, with respect to the South entrance contracts, NPS awarded one contract to DTRS Jackson Hole, LLC dba Four Seasons Jackson Hole, seven contracts to Forever Resorts, LLC dba Scenic Safaris, and two contracts to Teton Science Schools. AR170.

The contract awarded to Four seasons included two daily transportation events, including one daily snowmobile event. AR356. In October 2014, Four Seasons requested that its contract be terminated, so NPS terminated the contract. AR401. Various existing concessioners expressed interest in obtaining the unused transportation events. AR402-08, AR444-45. Nevertheless, the two transportation events remained unused for the 2014-2015 and 2015-2016 winter seasons. AR421, AR429.

After hearing that NPS was assessing interest in the two unused transportation events, Plaintiff contacted NPS regarding the transportation events in July 2016. AR475. Plaintiff was

told that no decision had been made and that "[w]e will add you to the list to be notified of any future opportunities." AR476.

In October 2016, NPS notified existing concessioners already holding contracts that it had decided to reassign the two unused transportation events "on an experimental basis for one season" and asked interested concessioners to participate in a lottery to reallocate the transportation events. AR478-79. NPS advised concessioners that "[t]he events can be used for one-way shuttle service to and from Old Faithful, for guided interpretive tours that included one-way service to and from Old Faithful, or a combination of the two." AR478. NPS also announced that one of the events would be used for the West entrance rather than the South entrance. AR479. As Plaintiff was not a current concessioner, Plaintiff did not receive a notification of NPS's decision to reallocate the unused transportation events.

In response, various concessioners requested that they be considered in awarding the unused transportation events. AR482, AR519, AR525. The number of lottery entries was determined by the number of contracts each concessioner already held. AR479. In November 2016, Scenic Safaris was selected through the lottery process to receive the unused transportation event for the South entrance. AR532. The lottery process was apparently conducted by pulling numbers out of a hat. AR530, AR532.

In December 2016, NPS issued an addendum to Scenic Safari's operating plan to add one transportation event for the 2016-2017 winter season. AR577-79. But, Scenic Safari was notified that if NPS continued the experimental service, Scenic Safari would continue operating the transportation event. AR576. The addendum stated that the transportation event was to be used primarily for one-way shuttle services between the South entrance and Old Faithful. AR578.

3

In July 2017 and September 2017, Plaintiff contacted NPS regarding the unused transportation events from the terminated Four Seasons contract. And in October 2017, NPS contacted Plaintiff declining to award Plaintiff a concession contract. Compl., ECF No. 1, Dec. of Frank Hubert Chapman II, ¶ 12.

In December 2017, Plaintiff filed this lawsuit challenging the method by which NPS reallocated the unused transportation events from the terminated Four Seasons contract. *See generally* Compl., ECF No. 1. Plaintiff moved for a Temporary Restraining Order, but the Court declined to grant one. *See generally* Jan. 4, 2018 Order, ECF No. 9. The parties subsequently moved for summary judgment.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, "when a party seeks review of agency action under the APA [before a district court], the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "the standard set forth in Rule 56[ ] does not apply because of the limited role of a court in reviewing the administrative record .... Summary judgment is [ ] the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Southeast Conference v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *Fed. Commc'n Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings,

4

and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "This is a 'narrow' standard of review as courts defer to the agency's expertise." *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). However, an agency is still required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (internal quotation omitted). "Moreover, an agency cannot 'fail[ ] to consider an important aspect of the problem' or 'offer[ ] an explanation for its decision that runs counter to the evidence' before it." *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 57 (D.C. Cir. 2015) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

### III. PROCESS FOR GRANTING INJUNCTIVE RELIEF

In its motion, Plaintiff asserts that it "seeks injunctive relief whereby NPS awards it a concession contract for the unused transportation event at the South Entrance for which it was affirmatively prevented from competing because of NPS's restricted lottery approach." Pl.'s Mot., ECF No. 23, 13. Plaintiff alternatively "requests that NPS be enjoined from continuing the 'experiment' for the upcoming season at the South Entrance and for the remaining term of the affected contract, and that NPS be directed to acquire the new services at the South Entrance through the required public competition process such that Plaintiff has a fair opportunity to compete." *Id.* at 13-14. Plaintiff claims that the appropriate test for granting such relief is whether it has established that it "will 'succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest.'" *Id.* at 13 (quoting *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 20 (2008)).

Plaintiff has misstated the standard for granting injunctive relief at this stage in the litigation. Plaintiff has filed a motion for summary judgment on the administrative record. Despite this, Plaintiff organizes its motion for summary judgment around the standard for granting a preliminary injunction. And, as Plaintiff has already been denied a temporary restraining order and is now moving for summary judgment on the administrative record, this case is well past its preliminary stage. *See* January 4, 2018 Order, ECF No. 9 (denying a temporary restraining order). At the summary judgment stage, the question is no longer whether or not "Plaintiff will succeed on the merits." Pl.'s Mot., ECF No. 23, 14. At the summary judgment stage, the question is whether or not Plaintiff has succeeded on the merits. And, only if Plaintiff has succeeded on the merits will the Court determine whether or not injunctive relief is warranted.

Accordingly, the Court will first decide whether or not Plaintiff prevails on its motion for summary judgment on the administrative record. If Plaintiff prevails on its motion for summary judgment, then the Court will assess whether or not Plaintiff is entitled to injunctive relief. And, Plaintiff is entitled to injunctive relief only if Plaintiff shows "'(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 694 (D.C. Cir. 2015) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

## IV. NPS'S DECSION TO REALLOCATE THE TRANSPORTATION EVENT THROUGH A CLOSED PROCESS

While the parties cite numerous interrelated statutes and regulations, the parties' core dispute is easily summarized: did NPS violate the APA when it reallocated the transportation events associated with the terminated Four Seasons contract to other existing concessioners without engaging in a public solicitation process?[3] Plaintiff argues that NPS violated the APA because the addition of a shuttle service transportation event was a major and material change to the concessioner's existing contract. Because the reallocation was a major and material change, Plaintiff contends that NPS was required to offer the transportation event by public solicitation rather than by amending existing contracts. Defendants disagree, arguing that the reallocation was a minor adjustment to the concessioner's contract so that NPS was permitted to make the reallocation as it deemed appropriate without engaging in a new, public solicitation process.

For reasons that will be explained further below, the Court agrees with Defendants and concludes that NPS's failure to hold a public solicitation process to reallocate the transportation events associated with the terminated Four Seasons contract did not violate the APA.

NPS was authorized to reallocate the unused transportation events resulting from the termination of the Four Seasons contract by allocating those events to concessioners with existing contracts. The contracts at issue are subject to the terms of the National Park Service Concessions Management Improvement Act of 1998 ("the 1998 Act") and its implementing

---

[3] Initially, Plaintiff also appeared to challenge NPS's transferring of one transportation event from the South entrance of Yellowstone to the West entrance as part of the reallocation of the terminated Four Seasons contract. But, Plaintiff does not address this issue in its motion and appears no longer to challenge the transfer. *See* Pl.'s Mot., ECF No. 23, 13 ("Plaintiff seeks only an award of a contract for the remaining event at the South Entrance."). Moreover, the Court finds that the transfer of the transportation event to the West entrance was permissible under regulation as a limited change involving only one transportation event. *See* 36 C.F.R. § 7.13(l)(10)(xiii) (allowing "limited changes to the transportation events allocated to each entrance").

regulations. 16 U.S.C. § 5951 *et seq.* (1988 Act); 36 C.F.R. Part 51 (regulations). Under regulations issued pursuant to the 1998 Act, "[a] concessioner that is allocated park area entrance, user days or similar resource use allocations for the purposes of a concession contract will not obtain any contractual or other rights to continuation of a particular allocation level pursuant to the terms of a concession contract or otherwise. Such allocations will be made, withdrawn and/or adjusted by the Director from time to time in furtherance of the purposes of this part." 36 C.F.R. § 51.76.

In interpreting this regulation, the Court finds that a transportation event is the type of "park area entrance, user day[], or similar resource use allocation[]" that NPS is permitted to make, withdraw, or adjust. Accordingly, when NPS "adjusted" an existing concessioner's contract to include an additional shuttle service transportation event, NPS was operating within the bounds of its operating regulations.

Despite the Court's finding that it was permissible for NPS to adjust an existing concessioner's contract by reallocating a transportation event, Plaintiff has three arguments for why the Court should not grant Defendants' motion for summary judgment. First, Plaintiff argues that the addition of the shuttle service transportation event was a new visitor service requiring a public solicitation process. Second, Plaintiff contends that NPS failed to consider the necessary criteria in amending an existing concessioner's contract to include the new transportation event. Third, Plaintiff argues that there are material disputes of fact not resolved by the Administrative Record. The Court will address each argument in turn.

First, Plaintiff argues that shuttle service transportation event was a new visitor service requiring a public solicitation process. According to Plaintiff, treating the reallocation of the shuttle service as an amendment to an existing contract "implies that NPS could simply define

any action as 'reallocations' and avoid having to go through the required public solicitation process for visitor service requirements." Pl.'s Mot., ECF No. 23, 16.

The Court disagrees. NPS is prohibited from including "a provision in a concession contract … [which] provide[s] new or additional visitor services under the terms of a concession contract." 36 C.F.R. § 51.76. But, here, the addition of the shuttle service transportation event was not a "new or additional visitor service." 36 C.F.R. § 51.76. The existing concessioners were already contracted to provide transportation events in the form of guided interpretive oversnow vehicle tours from the South entrance of Yellowstone. AR190. NPS amended an existing concessioner's contract to include an additional transportation event in the form of a one-way shuttle service between Old Faithful and the South Entrance of Yellowstone. AR748. Due to the similarity between the shuttle service and the oversnow vehicle services that the concessioner was already contracted to provide, the shuttle service was not a new visitor service. Instead, the Court finds that the reallocation of the shuttle service transportation event was a permissible adjustment to an existing concessioner's contract.

Supporting the Court's conclusion that the shuttle service was not a new service, shuttle service transportation events were contemplated in the existing concessioners' original Prospectus. The Prospectus stated, "[i]n addition to the required services presented above, the Concessioner will have discretion to provide services authorized in the Draft Contract. Exhibit 12-B is a summary of authorized services." AR28. Exhibit 12-B lists "Guided OSV Shuttle Trips" as an authorized service. *Id.* "Guided OSV Shuttle Trips" were also included in the Draft Contract contained in the Prospectus and in the contracts actually awarded. AR71, AR261. Accordingly, as shuttle services were included in the Prospectus, the Draft Contract, and the actually-awarded contracts, shuttle services were not a new visitor service.

Plaintiff counters that the shuttle services were a new service because "Guided OSV shuttle trips" were an authorized service rather than a required service. AR 28. But, Plaintiff fails to explain why being an authorized service, as opposed to a required service, would make the shuttle services a new service. Additionally, Plaintiff argues that the shuttle services were a new service because shuttle services had previously been performed by a different concessioner under a different contract. AR444. But, again Plaintiff fails to explain why the fact that a different concessioner previously performed shuttle services makes shuttle services a "new" service under the relevant concessioner's contract.

For these reasons, the Court concludes that the shuttle service transportation event was not a new visitor service. Accordingly, NPS acted permissibly in amending an existing concessioner's contract to include the shuttle service transportation event.

But, even if the Court were to agree with Plaintiff and conclude that the addition of the shuttle service transportation event was a new visitor service, NPS's actions in holding a closed solicitation process would still be permissible. Under the 1988 Act's regulations, NPS is required to engage in a new, public solicitation process when an additional service would "materially amends[]" a prospectus and the contract based on that prospectus or when an addition "does not incorporate the terms and conditions of the concession contract as set forth in the prospectus." 36 C.F.R. § 51.19. [4] However, "[a] concession contract may be amended to authorize the concessioner to provide minor additional visitor services that are a reasonable extension of the existing services." 36 C.F.R. § 51.76.

---

[4] The Court notes that 36 C.F.R. § 51.19 applies to the awarding of concession contracts. As the Court concludes that the reallocation of the shuttle service transportation event was an amendment to the concessioner's contract rather than an award of a new contract, 36 C.F.R. § 51.19 would not apply to the actions taken by NPS.

Insofar as the shuttle service is considered a new service, the Court finds that it is a minor additional service and a reasonable extension of the oversnow vehicle tours which were already being provided. 36 C.F.R. § 51.76. Similarly, the addition of this new service did not materially amend the contract of the existing concessioner as the concessioner was already required to provide oversnow vehicle services. 36 C.F.R. § 51.19. Accordingly, NPS was authorized to amend existing contracts to include this minor additional service rather than hold a public solicitation process.

The Court's conclusion that the addition of the shuttle service transportation event was not a material change is supported by the regulatory definition of "transportation event." The applicable regulation defines "transportation event" as "a snowmobile transportation event or a snowcoach transportation event." 36 C.F.R. § 7.13(l)(2). These events are in turn defined by the number of snowmobiles or snowcoaches travelling together. *Id.* Accordingly, the defining characteristic of a "transportation event" is not its purpose but is instead the number of snowmobiles or snowcoaches traveling together at a given time. Under this definition of "transportation event," the difference between an interpretive tour and a shuttle service is immaterial. Accordingly, amending an existing concessioner's contract for interpretive tours to also include a shuttle service was a reasonable extension of the transportation events already offered under the contract.

The Court also notes that the original Prospectus explicitly advised concessioners that underused transportation events could be reallocated. *See* AR16 ("The Service reserves the right to reallocate consistently underused transportation events from the Concessioner to other Concessioners."), AR30 (same), AR97 ("The Service may take consistently underused allocated transportation events from the Concessioner based on a seasonal or multi-seasonal average use.

These allocations would revert back to the Service and may be allocated to other concessioners within the same entrance."). The transportation events at issue here were underused as they had not been used during the 2014-2015 or the 2015-2016 winter seasons. AR 421, AR 429. That existing concessioners were on notice that these underused transportation events could be redistributed to them supports the Court's finding that the reallocation of the transportation events was not a material change but was instead a "minor additional visitor service[] that [was] a reasonable extension of the existing services." 36 C.F.R. § 51.76; *see AT&T Commc'ns v. Wiltel, Inc.*, 1 F.3d 1201, 1207 (Fed. Cir. 1993) (explaining in the context of procurement contracts that a change is within the scope of the original contract if "the solicitation for the original contract adequately advised offerors of the potential for the type of changes during the course of the contract that in fact occurred … [and if] the modification is of a nature which potential offerors would reasonably have anticipated" (internal quotation marks omitted)).

For the foregoing reasons, the Court concludes that, even if the shuttle service transportation event was a new service, its addition was a permissible minor amendment to the existing concessioner's contract rather than a material change requiring a public solicitation process.

Second, Plaintiff also argues that the Court should not grant Defendants' cross-motion for summary judgment because NPS violated the 1988 Act by reallocating the shuttle service transportation event without considering "the facilities, services, or capital investment required to be provided by the concessioner, and measures necessary to ensure the protection, conservation, and preservation of resources of the national park." Pl.'s Mot., ECF No. 23, 18 (citing 54 U.S.C. § 101913 and 36 C.F.R. § 51.17). Plaintiff similarly faults NPS for failing to consider the franchise fee. But, the legal authorities to which Plaintiff cites are relevant only if

NPS were awarding a new concession contract. *See* 54 U.S.C. § 101913 (entitled "Award of concession contracts"); 36 C.F.R. § 51.17 (in Subpart C- Solicitation, Selection and Award Procedures). And, the Court has already determined that NPS was not awarding a new concession contract and was instead only amending an existing concession contract. Accordingly, NPS was not required to consider the criteria asserted by Plaintiff in reallocating the shuttle service transportation event to an existing concessioner.

Third, Plaintiff argues that Defendants are not entitled to summary judgment because "Defendant's arguments are based on material facts that are in dispute and that are not established by the Administrative Record." Pl.'s Response, ECF No. 27, 3-5. Plaintiff specifically claims that two documents central to Defendants' arguments are not contained in the Administrative Record. First, Plaintiff asserts that the Administrative Record is missing the actual contract amendment by which the existing concessioner's contract was modified to add the shuttle service transportation event. Second, Plaintiff contends that Defendants have no documentation regarding whether or not NPS extended the shuttle services for only one season or for the remainder of the concession contract through 2024. Despite Plaintiff's arguments, the Court concludes that materials facts are not omitted from the Administrative Record so as to preclude granting Defendants summary judgment.

First, Plaintiff is correct that the Administrative Record does not contain the actual contract amendment reallocating the transportation event to the existing concessioner's contract. But, the Administrative Record does contain a draft of that amendment which is the latest version in NPS's possession. Defs.' Reply, ECF No. 29, 2; AR577-79. Plaintiff provides no argument as to why the draft amendment is insufficient nor does Plaintiff identify any parts of the draft amendment which it believes were altered in the final contract. Plaintiff's mere

13

speculation that there may have been some difference is not sufficient to defeat Defendants' motion for summary judgment. *See Brown v. Brody,* 199 F.3d 446, 458-59 (D.C. Cir. 1999) (explaining that speculation is insufficient to avoid summary judgment).

Second, the omission of documents concerning whether or not NPS extended the shuttle services for the remainder of the concession contract similarly does not preclude summary judgment. In this lawsuit, Plaintiff challenges NPS's modification of the existing concessioner's contract to add a transportation event which was reallocated from another concessioner's terminated contract. This agency action occurred in 2016. What NPS subsequently did with that transportation event in future seasons is not challenged in this lawsuit. Accordingly, documentation on the use of the transportation event in future seasons is not necessary to decide the parties' motions for summary judgment and need not have been included in the Administrative Record. *See Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 515 (D.C. Cir. 2010) (explaining that an administrative record need not include documents the agency did not consider in taking the challenged action).

Plaintiff has failed to provide the Court with any material facts that are in dispute due to omissions from the Administrative Record. Accordingly, the Court will not deny Defendants' motion for summary judgment on this ground.

In summary, the Court concludes that NPS did not violate the APA by amending an existing concessioner's contract to include the shuttle service transportation event as the reallocation was a permissible adjustment to the contract. And, even if the shuttle service transportation event were considered a new service, the reallocation was minor and did not materially amend the existing contract. Accordingly, NPS was not required to hold a public solicitation process.

## V. NPS'S DECISION TO USE A BLIND LOTTERY AMONG EXISTING CONCESSIONERS

For the reasons already given, the Court concludes that NPS did not violate the APA in using a closed process to reallocate the shuttle service transportation event. And, because NPS was permitted to use a closed process, which excluded Plaintiff, to reallocate the transportation event, the Court finds that Plaintiff lacks standing to challenge the particular method by which NPS reallocated the transportation events among the existing concessioners.

To establish standing, a plaintiff must show (1) that it has suffered an "injury in fact" that is (2) "caused by the challenged conduct" and which (3) is "redressable through relief sought from the court." *Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1285 (D.C. Cir. 2016) (internal quotation marks omitted). Here, Plaintiff's theory of standing is based on the argument that Plaintiff was deprived of the right to participate in a legally valid process for reallocating the shuttle service transportation events. *See* Pl.'s Mot., ECF No. 23, 13 ("A disappointed offeror, such as Plaintiff has the right to a legally valid procurement process, the deprivation of which constitutes a cognizable injury." (internal quotation marks omitted)). Plaintiff's asserted deprivation of the right to participate in a legally valid process gave Plaintiff standing to challenge NPS's use of a non-public solicitation to reallocate the shuttle service transportation event.

But, the Court has now concluded that NPS's decision to limit the reallocation process to existing concessioners, rather than to expand the process to the general public, was permissible. Accordingly, Plaintiff, not an existing concessioner, was not legally entitled to participate in the reallocation process. Because Plaintiff was not legally entitled to participate in the reallocation process, Plaintiff has no interest in how that non-public process was conducted. *See* Pl.'s Response, ECF No. 27, 10 ("Plaintiff … is not challenging whether Lottery was fair to the

existing concessioners."). Accordingly, Plaintiff lacks standing to challenge the method by which NPS redistributed the transportation events among the existing concessioners in the permissible closed process. *See Cheeks of N. Am., Inc. v. Fort Myer Const. Corp.*, 807 F. Supp. 2d 77, 92 (D.D.C. 2011) (explaining that an unsuccessful bidder lacked standing to bring suit when its failure to obtain a contract was not caused by the alleged violation).

Plaintiff argues that there are material facts in dispute as to whether or not Plaintiff has standing to challenge the NPS action. Specifically, Plaintiff contends that the Administrative Record contains no documentation that supports the contention that Plaintiff was properly excluded from the original 2014 competition. *See* Pl.'s Response, ECF No. 27, 4-5. But, Plaintiff misunderstands the issue. Plaintiff challenges NPS's 2016 decision to reallocate the unused transportation event among existing concessioners in a closed process. Plaintiff does not challenge NPS's 2014 refusal to grant Plaintiff a contract in the original, public competition. Accordingly, documentation relating to Plaintiff's failure to obtain a contract during the original 2014 competition is not relevant to the Court's standing analysis.

Because Plaintiff lacks standing to challenge the method by which NPS redistributed the shuttle service transportation event among the existing concessioners, the Court will not decide whether or not NPS's process was permissible. However, the Court notes that it is skeptical that NPS's chosen process violated the APA. Many existing concessioners were interested in obtaining the two available transportation events. AR404-08, AR412, AR420, AR444-45. And the use of a lottery was a simple, fair, and easy method of reallocating the transportation events among the existing concessioners. *See* AR478. There is no evidence that NPS's chosen method was arbitrary, capricious, or in violation of existing law.

The Court has already decided that NPS's actions in reallocating the shuttle service transportation event in a closed process among existing concessioners did not violate the APA. And, Plaintiff lacks standing to challenge the particular method used to reallocate the transportation events among existing concessioners in the closed process. Accordingly, Plaintiff has not shown a violation of the APA and the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiff's motion for summary judgment.

## VI.  REQUEST FOR INJUNCTIVE RELIEF

Because Plaintiff did not prevail on its motion for summary judgment, Plaintiff is not entitled to its requested relief, including injunctive relief. As previously explained, Plaintiff seeks "injunctive relief whereby NPS awards it a concession contract for the unused transportation event at the South Entrance," or in the alternative, injunctive relief requiring NPS "to acquire new services at the South Entrance through the required public competition process such that Plaintiff has a fair opportunity to compete." Pl.'s Mot., ECF No. 23, 13-14. Even if Plaintiff had prevailed on the merits of its motion for summary judgment, the Court would not have exercised its discretion to grant Plaintiff this injunctive relief.

An "injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter*, 555 U.S. at 32. In determining whether or not to exercise its discretion to grant injunctive relief, a court considers if a plaintiff has shown "'(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Morgan Drexen, Inc.*, 785 F.3d at 694 (quoting *eBay Inc.*, 547 U.S. at 391). In circumstances such as this, courts often "withhold[] judicial interjection unless it clearly appears that the case calls for an assertion of an overriding

17

public interest in having agencies follow the regulations which control government contracting." *M. Steinthal & Co., Inc. v. Seamans*, 455 F.2d 1289, 1300 (D.C. Cir. 1970) (internal quotation marks omitted) (discussing the government procurement process).

Here, even if Plaintiff had prevailed on the merits of its motion for summary judgment, the Court would not have exercised its discretion to grant Plaintiff's requests for injunctive relief. Injunctive relief is not warranted in this case for two primary reasons. First, Plaintiff has not established that it has been irreparably harmed. Second, Plaintiff has not adequately demonstrated that the balance of equities and the public interest weigh in favor of injunctive relief.

First, Plaintiff has not demonstrated that it has been irreparably harmed. In its summary judgment briefing, Plaintiff's arguments in support of irreparable harm are almost identical to those arguments put forth in Plaintiff's Application for a Temporary Restraining Order. ECF No. 2, 10-12. In the Court's Memorandum Opinion denying Plaintiff a temporary restraining order, the Court explained that it was "unable to ascertain the economic impact on Plaintiff's business in any meaningful way at all because—absent quoting the amount of revenue it could allegedly receive based on rates set forth in NPS's prospectus—Plaintiff has provided the Court with no evidence on this issue." ECF No. 10, 12. In its current briefing, this issue persists. Plaintiff has submitted no new evidence establishing irreparable harm, and Plaintiff's references to general financial loss are not sufficient to establish irreparable harm. *See Vencor Nursing L.P. v. Shalala*, 63 F. Supp. 2d 1, 13 (D.D.C. 1999) (explaining that "monetary loss is usually accorded little or no weight in the irreparable-harm analysis"). Plaintiff's claim of irreparable harm is further weakened by the fact that Plaintiff has continued to operate without the right to the transportation

events in question since at least 2014. The Court will not grant injunctive relief on the mere speculation of irreparable harm.

Moreover, it is not at all obvious that granting injunctive relief would cure Plaintiff's alleged irreparable harm. Plaintiff offers no support for its assumption that it would receive a contract for the unused transportation events through a public solicitation process. This is especially true as Plaintiff was not "next in line" for any of the original contracts awarded in 2014. Jan. 4, 2018 Memorandum Opinion, ECF No. 10, 13.

In addition to its failure to establish irreparable harm, Plaintiff also fails to demonstrate that the balance of the equities and the public interest weigh in favor of injunctive relief. Even if Plaintiff were to have prevailed on the merits, Defendants had at least a reasonable basis in law for restricting the reallocation of the unused transportation events to existing concessioners. *See M. Steinthal*, 455 F.2d at 1301 (restricting the court's analysis to "whether the … agency's decision had a reasonable basis" when an unchosen bidder for a government contract sought an injunction). Additionally, granting Plaintiff's request for injunctive relief could harm those concessioners who are currently providing shuttle services under their contracts. And, if the Court were to order NPS to award the shuttle service transportation event to Plaintiff, other interested bidders who also submitted proposals in the original 2014 public solicitation process would be injured due to their inability to participate. Moreover, removing the shuttle service transportation event from the existing concessioner risks creating a disruption in services for the public. And, Plaintiff has cited nothing which would lead the Court to find that the current concessioner's services are inadequate or otherwise against the public's interest.

Based on Plaintiff's failure to prove irreparable harm and that the balance of the equities and the public interest weigh in favor of granting injunctive relief, the Court would not exercise

its discretion to grant such relief even if Plaintiff had prevailed on its motion for summary judgment.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED, and Defendants' Cross-Motion for Summary Judgment is GRANTED. It was permissible under the APA for NPS to reallocate the shuttle service transportation event through contract amendment in a closed solicitation process. Because it was permissible for NPS to limit its solicitation process to existing concessioners, Plaintiff does not have standing to challenge the specific method by which NPS chose between existing concessioners. As Plaintiff has not prevailed in this lawsuit, it is not entitled to any relief, including injunctive relief. An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge